McRAE, Justice,
dissenting:
¶ 21. Once again, the majority has missed the boat in construing so narrowly two of the requisites of seaman status: contribution to the function or mission of a vessel and connection with a vessel in navigation which is substantial both in nature and duration. I disagree with the conclusion that Dorothy Lane, a janitor injured while cleaning a bathroom on the Grand Casino gambling ship, is not a seaman for purposes of the Jones Act or general maritime law. Accordingly, I dissent.
¶ 22. Pursuant to the Jones Act and general maritime law, “seaman” status depends on three factors: “(1) the vessel on which the claimant was employed must be in navigation; (2) the claimant must have a more or less permanent connection with the vessel; and (3) the claimant must be aboard primarily to aid in navigation.” Omar v. Sea-Land Service, Inc., 813 F.2d 986, 988 (9th Cir.1987) (quoting Estate of Wenzel v. Seaward Marine Services, Inc. 709 F.2d 1326, 1327 (9th Cir.1983) and citing Desper v. Starved Rock Ferry Co., 342 U.S. 187, 190-191, 72 S.Ct. 216, 218, 96 L.Ed. 205 (1952)). The term “seaman” long has been construed liberally to include “all those on board whose labor contributes to the accomplishment of the main object in which the vessel is engaged.” Osland v. Star Fish & Oyster Co., 107 F.2d 113 (5th Cir.1939). See also The J.S. Warden, 175 F. 314 (D.C.N.Y.1910)(Hand, J.)(“As I can see in principle no reason why there should be an artificial limitation of rights to those engaged in the navigation of the ship, to the exclusion of others who equally further the purposes of her voyage ... I shall decide that the libelant has a lien for his wages as a bartender.”). Thus, cooks, stewards, pursers, porters, chambermaids, laundresses, bartenders, barbers, fishermen all have been afforded seaman status for purposes of obtaining seaman’s remedies. M. Norris, The Law of Seamen, § 2:3 (4th ed.1985). Clearly, Lane’s duties as a janitor furthered the Grand’s purpose as a gaming vessel. That she slept at home, earned hourly wages and had no duties while the boat was in motion are of no relevance to the issue of whether she contributed to the vessel’s function or purpose nor do those factors impact the “permanence” of her relationship to the vessel. Moreover, as the case law overwhelmingly illustrates, seaman status is not reserved only for those who are involved literally in the navigation of a vessel. Thus, in Texaco, Inc. v. Addison, 613 So.2d 1193 (Miss.1993), we found that a roustabout on a welding barge used to reconstruct an offshore fixed platform oil storage and collection facility was a Jones Act seaman. Addison, like Lane, was an hourly wage earner who slept on shore. He spent nine to ten hours a day on the welding barge platform. He was injured when he fell while carrying some pipes. At the time of the accident, the barge platform was moored to a tank battery mounted on piles permanently driven into the floor of the Gulf.
¶ 23. The Fifth Circuit’s decision in Palmer v. Fayard Moving and Transportation Corp., 930 F.2d 437 (5th Cir.1991) provides further support for Lane’s claim. Palmer, a public relations agent for Fayard Moving, was injured when she slipped on a ladder while boarding the MTV FRANCES FAYARD. Using the test set out in Offshore Co. v. Robison, 266 F.2d 769, 778-779 (5th Cir.1959), the Fifth Circuit found that Palm *1384 er, unlike Lane, was employed primarily in a land-based position and thus did not meet the first part of the Robison test.[1] Robison provides:
[T]here is an evidentiary basis for a Jones Act case to go to the jury: (1) if there is evidence that the injured workman was assigned permanently to a vessel (including special purpose structures not usually employed as a means of transport by water but designed to float on water) or performed a substantial part of his work on the vessel; and (2) if the capacity in which he was employed or the duties which he performed contributed to the function of the vessel or to the accomplishment of its mission, or to the operation or welfare of the vessel in terms of its maintenance during its movement or during anchorage for its future trips.
Id. at 778. See also McDermott Int’l., Inc. v. Wilander, 498 U.S. 337, 352, 111 S.Ct. 807, 816, 112 L.Ed.2d 866 (1991)(following Robi-son). As distinguished from Palmer, who spent only nineteen percent of her time working on the boat, Lane’s duties cleaning the Grand’s bathrooms required that she perform all of her work on the vessel.
¶ 24. Today’s majority further denies Lane seaman status because of its finding that at the time of her injury, the Grand was not a “vessel in navigation” since it was “a stationary dockside casino that had never been used in navigation, was securely fastened to its dockside mooring cells in inland waters, and had been secured over the preceding fourteen months.” In so finding, the majority apparently overlooks the basic precept that for purposes of the Jones Act, “vessel in navigation” means that it is “engaged as an instrument of transportation and commerce on navigable waters” and need not be “plying the seas ” at the time an injury occurs.[2] Norris, The Law of Seaman, § 2:8 (4th ed.1985). The Grand was engaged in commerce to the same extent as any other pleasure ship, e.g., the “Love Boat” or any vessel used for entertainment rather than for shipping cargo. Under Mississippi law, it was required to be moored in navigable waters and was, at the time of Lane’s accident, so located. Further, it matters not the Grand had been moored for fourteen months; it need only be capable of navigation. In Addison, we found that a welding barge, moored to tank battery supported by pilings driven into the floor of the bay, was a vessel for purposes of the Jones Act. Addison, 613 So.2d at 1200. In that case, we noted with approval Louisiana’s use of the maritime law “capability test” which defines a “vessel” as encompassing “‘every description of water craft or other contrivance used or capable of being used as a means of transportation on water.’” Id. (quoting Orgeron v. Avondale Shipyards, Inc., 561 So.2d 38, 41 (La.1990)). In Orgeron, a barge used as a work platform was found to be a “vessel” because it was capable of navigation on water and at the time of the accident, it was floating on navigable water. Orgeron, 561 So.2d at 43. The Grand was afloat in navigable waters at the time of Lane’s injury. It may be towed and thus, it is capable of navigation. It matters, not, therefore, that it was moored at the time of Lane’s injury or that the vessel was not sailing the bounding main.
¶ 25. “Seaman status is ordinarily a question for the trier of fact and even where the facts are largely disputed, the jury’s role should not be lightly short-circuited.” Daniel v. Ergon, Inc., 892 F.2d 403, 407 (5th Cir.1990). As the Fifth Circuit further stated, in language quoted by the majority, “the issue of seaman status ‘should only be re *1385 moved from the trier of fact (by summary judgment or directed verdict) in rare circumstances ... and even marginal Jones Act claims should be submitted to the jury.’” Daniel, 892 F.2d at 407 (quoting Bernard v. Binnings Construction Co., 741 F.2d 824, 827 (5th Cir.1984)). Summary judgment is proper only “where the ‘only rational inference to be drawn from the evidence is that the worker is not a seaman.’ ” Id. (quoting Beard v. Shell Oil Co., 606 F.2d 515, 517 (5th Cir.1979)). In the case sub judice, that Lane was not a seaman is not the only rational inference that can be drawn from the evidence. Accordingly, I disagree with the majority’s decision to affirm the circuit court’s award of summary judgment to Grand Casino.

. It bears note that while the Fifth Circuit found that the land-based Palmer was not a Jones Act seaman, the court found that she still could invoke admiralty jurisdiction and pursue a negligence claim under general maritime law since she was injured while the vessel was moored in navigable waters and she was, at the very least, a passenger aboard the vessel. Palmer, 930 F.2d at 439-441.

. Even if the Grand does not meet the majority's narrow construction of vessel, Robison’s definition of vessel includes "special purpose structures not usually employed as a means of transport by water but designed to float on water.” Robison, 266 F.2d at 778.