Archie J. SLAYDON

v.

SONAT OFFSHORE DRILLING, INC., et al.

Civ. A. No. G–92–181.

United States District Court, S.D. Texas, Galveston Division.

April 13, 1993.

Arthur Louis Schechter, Schechter & Associates, Houston, TX, for plaintiff.

John P. Napolitano, Jr., Abbott & Meeks, Jeffrey H. Marsh, Mattingley & Marsh, Houston, TX, Eileen R. Madrid, Rice Fowler et al, New Orleans, LA, for defendants.

## ORDER

KENT, District Judge.

Before the Court is the Motion for Summary Judgment of Defendant Magnum Construction Services, Inc. For the reasons set forth below, the Court DENIES this motion.

■ This case arises out of the injuries the Plaintiff allegedly suffered while working as a welder on the drill ship DISCOVERER 534 ("D534"). The two accidents that caused these injuries occurred while the D534 was undergoing substantial repairs for damage caused by an explosion and fire that nearly sunk the vessel. The Plaintiff filed suit under the Jones Act and general maritime law against: his employer, Magnum Construction Services, Inc. ("Magnum"); the owners of the drill ship, Sonat Offshore Drilling, Inc. and Sonat, Inc.; and, the company for whom the D534 performed drilling services, B.P.

Exploration, Inc. Magnum's Motion for Summary Judgment seeks to have the Plaintiff's Jones Act and maritime claims dismissed on the ground that the Plaintiff cannot bring an action under the Jones Act or general maritime law because, as a matter of law, the Plaintiff is not a seaman.

■ A worker is considered a seaman if (1) the worker was permanently assigned to, or performed substantial work on, a vessel in navigation; and (2) the worker contributed to the function of the vessel or the accomplishment of its purpose. *See, e.g., Barrett v. Chevron, U.S.A., Inc.,* 781 F.2d 1067, 1073 (5th Cir.1986). Magnum claims that the Plaintiff was not a seaman because the D534 was not in navigation when the Plaintiff suffered his injuries.[1] Magnum primarily bases this claim upon the fact that the accidents which caused the Plaintiff's injuries occurred while the D534 was performing sea trials. To support this assertion, Magnum cites *Williams v. Avondale Shipyards, Inc.,* 452 F.2d 955 (5th Cir.1971), and *Reynolds v. Ingalls Shipbuilding Division, Litton Systems, Inc.,* 788 F.2d 264 (5th Cir.1986). In both of these cases, the Fifth Circuit unequivocally held that a ship "undergoing sea trials is not 'in navigation' for purposes of the Jones Act." *Reynolds,* 788 F.2d at 267.

■ However, the Court is not prepared to render summary judgment on this issue. Despite Magnum's claims to the contrary, *Williams* and *Avondale* are not completely on point with the facts of the instant case. In both *Williams* and *Avondale,* the ships upon which the plaintiffs were injured were newly constructed vessels. An examination of the rationale set out in these decisions leads this Court to conclude that this distinction is crucial. Consider this statement made in *Williams:*

A shipbuilder's worker assisting in the building and ultimate commissioning of a launched *but uncompleted* vessel floating or maneuvering in navigable waters is not a seaman within the meaning of the Jones

---

1. Magnum also claims that the Plaintiff is not a seaman because he was not permanently assigned to the D534. The Court will not waste a great deal of time addressing the merits of this assertion because it is so clearly a question of fact. Whether a worker was permanently attached to a vessel is classically the type of question that a court should leave for the jury. *See, e.g., Desper v. Starved Rock Ferry Co.,* 342 U.S. 187, 190, 72 S.Ct. 216, 218, 96 L.Ed. 205 (1952).

Act, because his vessel is *not yet an instrumentality of commerce*—private or public—and is therefore not "in navigation."

*Williams,* 452 F.2d at 958 (emphasis added). The Fifth Circuit's heavy reliance on the fact that the ships in *Williams* and *Reynolds* were brand new precludes this Court from totally relying on these cases. In the Court's mind, the sea trial exception to the Jones Act only applies to newly constructed vessels.

The D534 was not a newly constructed vessel but rather had apparently been in navigation for quite some time prior to the explosion and fire that precipitated the major repairs. Magnum, in recognition of this fact, asserts that even if *Reynolds* and *Williams* are not dispositive, the Plaintiff still fails to establish seaman's status because the D534 was withdrawn from navigation while the repairs were performed and had not yet returned to navigation when the Plaintiff's injuries occurred.

■ The Fifth Circuit has held that the determination of whether a ship in repair is still in navigation depends upon the nature and extent of the repairs and who controls those operations. *See, e.g., Wixom v. Boland Marine & Manufacturing Co.,* 614 F.2d 956, 957 (5th Cir.1980). Typically, a vessel is considered to be out of navigation if the vessel is undergoing major repairs or being converted from one use to another and if control of the vessel passes from the shipowner to the entity performing the work. Further, in the cases cited by Magnum, the repair work is performed over a substantial period of time at substantial cost, the ship's power is secured or dismantled, and the ship's crew is dismissed. *See, e.g., Wixom,* 614 F.2d at 957; *Hodges v. S.S. Tillie Lykes,* 512 F.2d 1279, 1280 (5th Cir.1975); *Erwin v. Lykes Brothers Steamship Co.,* 472 F.2d 1217, 1218–19 (5th Cir.1973); *McClendon v. OMI Offshore Marine Service,* 807 F.Supp. 1266, 1267–68 (E.D.Tex.1992).

In this case, the D534 did undergo substantial repairs and was even upgraded in performance capability. Moreover, the work was performed over a substantial period of time at the cost of approximately $25 million. However, the D534 remained under her own power, maintained a full crew, and, as near as the Court can tell, remained under the control of Defendant Sonat Offshore Drilling, Inc. while the work was being performed. Clearly then, there is a question of fact as to whether the D534 was ever removed from navigation. Furthermore, even if the D534 was at one time out of navigation, there is a question of fact whether the ship had returned to navigation by the time the Plaintiff suffered his injuries. As the Plaintiff points out, despite the fact that the D534 was performing what Magnum calls sea trials, the D534 was maneuvering 200 miles off the coast and conducting drilling samples when the second injury occurred.

■ However, the Court's ruling is not a declaration that the Court is totally unsympathetic with Magnum's concerns. The Court finds merit in not only the generic assertion that a vessel conducting sea trials after major repair work may not be in navigation, but also the specific suggestion that the D534 was not in navigation at the time of the Plaintiff's injuries. Certainly, the logic that compelled the Fifth Circuit to hold that newly constructed vessels performing sea trials are not in navigation is equally compelling when applied to vessels making sea trials following their withdrawal from navigation for major repair work. In both situations, the vessels are "undergoing sea trials precisely to determine what, if any, additional work needs to be done." *Reynolds,* 788 F.2d at 267. Consequently, it stands to reason that, if a vessel is withdrawn from navigation for major repairs, the newly repaired vessel, like a newly constructed vessel, does not warrant seaworthiness while the vessel's performance capabilities are being tested.

Nevertheless, in light of the above considerations, the Court concludes that several questions of material fact still remain as to whether the D534 was in navigation when the Plaintiff suffered his injuries. Consequently, the Court DENIES the Motion for Summary Judgment of Defendant Magnum Construction Services, Inc. However, the Court is willing to entertain good faith dispositive motions concerning the Plaintiff's status as a seaman as may be subsequently appropriate in this proceeding. In the meantime, the

**1012**

parties are strongly urged to discuss settlement.

IT IS SO ORDERED.