MERRIL M. HUCH, Plaintiff-Appellant, v. S.J. GROVES AND SONS, INC., d/b/a Lock 26 Constructors, Defendant-Appellee.

Fifth District   No. 5—87—0696

Opinion filed March 3, 1989.

Edward J. Kionka, of Murphysboro, and Jerald J. Bonifield, of Belleville, for appellant.

D. Bradley Blodgett, of Hinshaw, Culbertson, Moelmann, Hoban & Fuller, of Springfield, for appellee.

JUSTICE HARRISON delivered the opinion of the court:

Plaintiff, Merril M. Huch, filed an action in the circuit court of Madison County to recover damages from defendant, S.J. Groves and Sons, Inc., d/b/a Lock 26 Constructors, for personal injuries he sustained in the course of his employment. Plaintiff brought his action

pursuant to 46 U.S.C.A. §688 (West 1975), commonly known as the Jones Act. Following certain pretrial discovery, defendant moved for summary judgment on the grounds that plaintiff was not a "seaman" and therefore was not entitled to sue under the Jones Act. Defendant's motion was granted, and judgment was entered in its favor. Plaintiff now appeals. We reverse.

■ Under section 2—1005(c) of the Code of Civil Procedure (Ill. Rev. Stat. 1987, ch. 110, par. 2—1005(c)), summary judgment is proper only "if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Illinois courts have repeatedly emphasized that the purpose of summary judgment is not to try a question of fact, but to determine whether a triable question of fact exists. (*Miller v. Smith* (1985), 137 Ill. App. 3d 192, 196, 484 N.E.2d 492, 496.) Summary judgment is a drastic remedy. It must be awarded with caution in order to avoid preempting a litigant's right to trial by jury or his right to fully present the factual basis of the case where a material dispute may exist. In passing on a summary judgment motion, the trial court is therefore required to construe the pleadings, affidavits, depositions and admissions on file strictly against the moving party and liberally in favor of the opponent. Only if these materials establish that the movant's entitlement to summary judgment is clear and free from doubt may such a motion be granted. (137 Ill. App. 3d at 196, 484 N.E.2d at 496.) This is not such a case.

■ The sole question presented by defendant's motion for summary judgment here was whether plaintiff was a "seaman" within the meaning of the Jones Act and therefore entitled to sue defendant, his employer, under the Act for negligence. This court has adopted the test set forth by the United States Court of Appeals for the Seventh Circuit in *Johnson v. John F. Beasley Construction Co.* (7th Cir. 1984), 742 F.2d 1054, 1062-63, *cert. denied* (1985), 469 U.S. 1211, 84 L. Ed. 2d 328, 105 S. Ct. 1180, for determining whether an injured party has seaman's status. (*Dungey v. United States Steel Corp.* (1986), 148 Ill. App. 3d 484, 493-96, 499 N.E.2d 545, 552-53, *cert. denied* (1987), 484 U.S. 819, 98 L. Ed. 2d 38, 108 S. Ct. 75; *Dale v. Luhr Brothers, Inc.* (1987), 158 Ill. App. 3d 402, 407, 511 N.E.2d 933, 935, *cert. denied* (1988), 486 U.S. 1007, 100 L. Ed. 2d 198, 108 S. Ct. 1734.) Specifically, we have held that there is an evidentiary basis for submitting to the trier of fact the question of an injured party's status as a seaman if:

"(1) the person injured had a more or less permanent connection with a vessel in navigation, and (2) the person injured made a significant contribution to the maintenance, operation, or welfare of the transportation function of the vessel." 158 Ill. App. 3d at 407, 511 N.E.2d at 935.

The pleadings, affidavits and depositions on file in this case indicate that defendant had a contract with the United States Army Corps of Engineers to construct the replacement Lock and Dam No. 26, second stage lock, in the Mississippi River near Alton, Illinois. Defendant created a cofferdam by erecting cells which enclosed the construction site. To facilitate work on the cofferdam, defendant obtained barges. It used these barges to move material and as a place for doing fabrication work.

Plaintiff was an operating engineer, that is, one who operates heavy equipment. On June 19, 1985, plaintiff was hired by defendant to replace a worker who had become sick. After reporting to work, plaintiff was taken by boat to one of the barges used by defendant for work on the cofferdam. The barge was located in the middle of the river and was moored to the cofferdam by mooring lines. It was not self-propelled and had no steering capacity. It had to be pushed into place by tugboats and then secured with mooring lines.

The barge was made of steel and had a flat deck. It was called a "fab barge" because it was used for the fabrication of steel material. The barge was not equipped with a cabin, galley, fresh water storage, permanent toilets, or fixed navigational lights, but it did have a trailer, which was used by workers to change clothes, eat lunch, and protect themselves from the elements. Also located on the deck of the barge was a 14- or 18-ton "cherry picker" crane. Plaintiff's job on the barge was to operate this crane.

On the day plaintiff was injured, the barge was moored in the middle of the river. Plaintiff was transported there by boat. Upon his arrival, plaintiff was directed to move "some ladders and things" for the pile drivers so that the barge could move further ahead and work on the piling could be performed. After completing this assignment, plaintiff went to the trailer to take his break. When the break was over, plaintiff decided to go back outside to look around. As he exited the trailer and started down the steps in front of it, one of the steps gave way and he fell to the ground. In plaintiff's words, "I went down twisted my knee and hit my elbow and jammed my shoulder." That fall, and the resulting injuries sustained by plaintiff, are the basis for plaintiff's Jones Act claim against defendant. There is no dispute that the circuit court granted defendant's motion for sum-

mary judgment only because it believed that plaintiff could not, as a matter of law, be regarded as a "seaman" within the meaning of the Jones Act. On this appeal, plaintiff argues that the circuit court's decision cannot be sustained because a genuine issue remains as to plaintiff's status as a "seaman." We agree.

■ As we have indicated, there is an evidentiary basis for submitting to the trier of fact the question of the injured party's status as a seaman if:

> "(1) the person injured had a more or less permanent connection with a vessel in navigation, and (2) the person injured made a significant contribution to the maintenance, operation, or welfare of the transportation function of the vessel." (*Dale*, 158 Ill. App. 3d at 407, 511 N.E.2d at 935.)

In this case, defendant concedes that the barge on which plaintiff was employed constituted "a vessel in navigation." Defendant argues, however, that plaintiff did not have "a more or less permanent connection" with that vessel. This argument must fail. In analyzing whether an injured party had the status of a "seaman," one must look to his duties and permanency at the time of his accident. (*Snelling v. Elmer Logsdon River Construction Co.* (1983), 120 Ill. App. 3d 80, 83, 457 N.E.2d 990, 992.) The materials submitted to the circuit court here indicated that, at the time of his injury, plaintiff had been hired by defendant to replace one of its regular workers and that his responsibilities were limited to operating the "cherry picker" crane on the barge. Although plaintiff's employment may have ended after as little as one day if the regular worker decided to return to work, uncontradicted deposition testimony by plaintiff indicated that he may ultimately have remained at work on the barge "forever."

■ ■ Defendant points out that plaintiff had only been on the job for several hours at the time he was injured, but this is not dispositive. An employee who is otherwise entitled to bring an action under the Jones Act cannot be barred from seeking relief merely because he happens to be new on the job. As one Federal court has held, lack of long, continued attachment to a vessel cannot, as a matter of law, serve to deny seaman's status under the Jones Act to an employee who is injured while assigned to and performing normal crew service. (*Mach v. Pennsylvania R.R. Co.* (3d Cir. 1963), 317 F.2d 761, 764.) Plaintiff was not a temporary worker. He was a replacement worker. The record, as presented to the circuit court, indicates that he was hired exclusively to work on the barge, and during the entire time he was employed by defendant, the only work he did he did on the barge. At a minimum, we therefore believe that a gen-

uine issue existed as to whether plaintiff had "a more or less permanent connection" with the barge at the time he was injured.

Defendant argues, in the alternative, that entry of summary judgment by the circuit court was nevertheless proper because the record is devoid of evidence which would establish the second prong of the test for seaman status, namely, that plaintiff made "a significant contribution to the maintenance, operation, or welfare of the transportation function of the vessel." In particular, defendant contends that on the facts of this case, plaintiff "clearly" did not contribute in any way to the transportation function of the vessel. We disagree.

Defendant submitted an affidavit from Leland Tonack, its safety manager on the Lock No. 26 construction project, which stated:

> "The barges, including the one upon which the plaintiff had his accident, had only a work crew which was engaged in cofferdam erection activity. Tugboats pushed the barges into place, and secured them in place with mooring lines. The work crew to which the plaintiff was assigned to support had absolutely nothing to do with the transportation of the barges by the tugs, or with the securing off of the barges with the mooring lines."

As we have previously indicated, however, plaintiff testified in his deposition that when he reported to the barge, he was directed "to move some ladders and things for them, for the pile driver so they could move the barge further ahead so they could work on the piling." In addition, an affidavit by Larry J. Schulz, who was working with plaintiff on the day he was injured, indicated that the "cherry picker" crane which plaintiff was assigned to operate on the day of his injury was being used "to remove certain ladders and other materials that were fixed from the barge to the stationary parts of the dam in construction so that the barge could be moved from one place to another." Schulz further swore in his affidavit that plaintiff's "sole occupation on that particular day was preparing the barge for movement from one place to another so the construction project, which proceeded from that particular barge, could continue."

In view of this, we likewise believe that a genuine issue remained as to whether plaintiff made a significant contribution to the transportation function of the barge. (See *Dale v. Luhr Brothers, Inc.* (1987), 158 Ill. App. 3d 402, 511 N.E.2d 933, *cert. denied* (1988), 486 U.S. 1007, 100 L. Ed. 2d 198, 108 S. Ct. 1734.) If the circuit court based its decision to grant summary judgment on this point, it therefore erred. Defendant has not cited, and we have not found,

any other basis upon which the circuit court's decision can be sustained. Accordingly, the circuit court's order granting summary judgment in favor of defendant is reversed, and the cause is remanded for further proceedings consistent with this opinion.

Reversed and remanded.

WELCH, P.J., and LEWIS, J., concur.